[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR TEMPORARY RESTRAINING ORDER
Plaintiff has applied for a temporary injunction to restrain the defendant from entering into a contract with any party other than plaintiff for school bus transportation and other relief as set forth in the verified complaint. For reasons hereinafter stated, the request is denied.
From the evidence, it is found that the defendant, a municipal corporation, issued an invitation to plaintiff and others to bid on a five-year contract to provide student transportation for the Hartford Board of Education for In-City and Project Concern Programs.[1]
The invitation to bid was amended at least once on March 25, 1998.
Plaintiff and two other companies submitted a bid in response to the amended information. Plaintiff was the low bidder.
On May 20, 1998, plaintiff was informed by an officer of defendant's purchasing division that it was not a responsible bidder as defined by § 2-548 of the Hartford Municipal Code as a direct result of an active case with the National Labor Relations Board (NLRB). Subsequently, it was decided that the decision as to whether or not plaintiff was a responsible bidder under § 2-548 had to be made by the city manager.
After the matter was referred to that officer, the City manager decided that plaintiff was not a responsible bidder because of § 2-548 and the NLRB matter. This decision was appealed to the Health and Human Services Committee of the Hartford Court of Common Council, which affirmed the determination that plaintiff was not a responsible bidder under the provisions of § 2-548 of the Hartford Municipal Code. CT Page 8928
While these makers were pending, by letter dated May 29, 1998, the plaintiff as the apparent low bidder was requested to submit additional information to the purchasing division to continue the application process. Plaintiff submitted additional information and documents in compliance with the request.
Plaintiff being the low bidder and being denied the contract has instituted the present action in three counts. The first count alleges a breach of contract and of the "Covenant of Good Faith and Fair Dealing." The second count claims a deprivation of constitutional rights and the third count alleges a violation of the Connecticut Antitrust Act.
The matter is now before the court on the claim for a temporary injunction. To obtain a temporary injunction plaintiff must show clearly that protectable interests are at stake. It must establish that it will prevail subsequently to a final hearing on its application for a permanent injunction. CovenantRadio Corporation v. Ten Eighty Corporation, 35 Conn. Sup. 1, 3
(1977). To obtain injunctive relief plaintiff bears the burden of proving facts which will establish irreparable harm. Wilcox v.Willard Shopping Center Associates, 208 Conn. 318 (1988). Plaintiff must also show the lack of an adequate remedy at law.Stocker v. Waterbury, 154 Conn. 446, 449 (1967). If the plaintiffs have an adequate remedy at law, then they are not entitled to the injunction. Mitchell v. Southern New EnglandTelephone Co., 90 Conn. 179, 183 (1916).
The power of equity to grant injunctive relief may be exercised only under demanding circumstances. Restraining the action of an individual or a municipal corporation such as here is an extraordinary power always to be exercised with caution, never without the most satisfactory reasons. Anderson v. LatimerPoint Management Corporation, 208 Conn. 265, 267 (1988).
It is reasonable to conclude from the testimony of plaintiff's chief executive officer that her corporation bid on the contract in the expectation that it would make a profit. It was her testimony that plaintiff corporation anticipated a profit of $100,000 to $150,000 per year, if awarded the contract.
Whether damages are to be viewed by a court of equity as irreparable or not depends more upon the nature of the right which is injuriously affected than upon the pecuniary loss CT Page 8929 suffered. Cummings v. Trip, 204 Conn. 67, 90 (1987). Although some slight benefit of a business nature may inure to plaintiff from being awarded a contract of the magnitude involved here an award of money damages would adequately compensate plaintiff. For these reasons, it must be concluded that plaintiff has a full and adequate remedy at law and will not suffer irreparable harm if the relief sought is denied.
Although the above conclusion is dispositive of the matter now before the court, plaintiff has raised other issues which should be addressed.
In the first count of the complaint, plaintiff alleges a contract Plaintiff's bid was a binding offer to make a contract. This bid, even though it was the lowest bid, is only an offer which until it was accepted by the City does not give rise to a contract between the parties. John J. Brennan Construction CorporationInc. v. Shelton, 187 Conn. 695, 702 (1982). This particularly is true where this City has reserved the right to reject any and all bids. Id.
Plaintiff, however, argues that the case is about the efficient use of taxpayer money and that it is a well-established principle that "[m]unicipal competitive bidding laws are enacted to guard against such evils as favoritism, fraud or corruption in the award of contracts to secure the best product at the lower price, and to benefit taxpayers, not the bidders; they should be construed to accomplish these purposes fairly and reasonably with sole reference to the public interest." Id. The court does have jurisdiction to grant equitable relief where the very object and integrity of the competitive bidding process is defeated by the conduct of municipal officials. Spinella Construction Company v.Manchester, 189 Conn. 539 (1983).
Plaintiff argues that in rejecting its bid, the City engaged in favoritism, collusion and selective enforcement of its Code. The evidence, however, does not support these allegations.
As a part of the bid process plaintiff and the other bidders were required to submit an affidavit that it was not in violation of the National Labor Relations Act. A copy of Hartford Municipal Code § 2-548, which provided that a party in violation of the act could not be considered a responsible bidder, was included with the invitation to bid forms. CT Page 8930
Plaintiff and the other bidders all submitted documentation indicating that they were in violation of the act. This resulted in the determination that plaintiff and the others were not responsible bidders and was a factor in the ultimate rejection of plaintiff's bid.
The evidence indicates that this was the first time in 36 years that bidders were disqualified on such grounds. Plaintiff argues that this was more than coincidence and the fact that it had cleared up its NLRB problems before the final determination of ineligibility demonstrates a conspiracy involving favoritism, fraud or corruption on the part of the City. The evidence, however, does not establish any such conclusion. To reach the conclusions urged by plaintiff, the court would have to resort to speculation which it cannot do.
Plaintiff's bid submission also appeared to have been deficient in other respects. The financial statement submitted by plaintiff does not appear to be in accordance with the bid requirements and the Dunn Bradstreet report indicated questions about plaintiff's capacity to perform the contract.
As a part of the bid process, plaintiff was required to provide a list of proposed vehicles which it would use if awarded the contract. Plaintiff did not submit such a list but submitted a list of vehicles available for purchase from a vendor. This would seem to indicate that plaintiff did not own or have under contract the buses it would require to perform the contract. It also prevented defendant from evaluating the number and type of vehicles available for performance of the contract.
Plaintiff's argument that these deficiencies are pretextual and further evidence of collusion is not established by the evidence.
The date of these proceedings is also significant. Hartford's schools will be opening in less than a month. Under the circumstances of this case, the harm and inconvenience which would, in all probability, be caused to the public from the granting of the relief sought would be so out of proportion to any injury which plaintiff might suffer that it would be an unwarranted exercise of the equitable power of the court to grant the injunction. Mitchell v. Southern New England Telephone Co.,90 Conn. 179, 183 (1916). This is particularly true when plaintiff is free to pursue its claim for money damages. CT Page 8931
Accordingly, the request for a temporary injunction, denied.
Joseph J. Purtill Judge Trial Referee